IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 11 CR 659-1 |
| Jeffrey Sulaski ) | Judge Robert W. Gettleman |
| ] | |
| Defendant. ) | |

**Defendant's Re-Sentencing Memorandum**

**Introduction**

Defendant Jeffrey Sulaski ("Mr. Sulaski") is unlike most defendants who appear in criminal cases in this Court in that he has led two very different lives. The first was until he over 40 in which he was in the military on active duty and then the reserves and responsibly employed for a number of years–in other words pretty much of a model citizen. The second life began after that and included two stretches of multiple bank robberies with prison in between.

What caused this dramatic and negative turn for the worse? His two siblings and Mr. Sulaski believe that he became what his late father had been- a compulsive gambler and in desperation, he began robbing banks to cover his gambling losses. [Letter of Jeffrey Sulaski, 2014 Letter of Ronald Sulaski, 2014 Letter of Cynthia Sulaski]. The gambling addiction expert appointed by the Court at the defense's request also believes that Mr. Sulaski "exhibits many of the signs of having a pathological gambling disorder as described in DSM-V."

[Goldman Report at p. 1].[1]  There simply is no other explanation for what caused Mr. Sulaski to go from being a law abiding citizen to a serial bank robber.

In sentencing Mr. Sulaski in 2014, the Court applied the career offender enhancement in USSG ¶4B.1.1-2, which jumped his USSG sentencing range from 84-105 months (Offense Level 23, Criminal History Category V) to 151-188 months.  The Court sentenced Mr. Sulaski to the low end of the career offender range.[2]

Now the defense asks that due to the impact of Mr. Sulaski' gambling addiction in the commission of his extortion and bank robbery offenses and to enable him to get gambling addiction treatment not available in federal prisons that he be re-sentenced to a term of imprisonment of 95 months with supervised release conditions as outlined in Mr. Goldman's report.  In deciding what sentence to impose on Mr. Sulaski, the Court should consider the words of the Supreme Court in *Pepper v. U.S.*, 131 S.Ct. 1229, 1239-40 (2011):

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an

---

[1]  Counsel for Mr. Sulaski believes that the siblings' letters were made available to the Court in Mr. Sulaski's original sentencing.  However, counsel is submitting these letters, statements from Mr. Sulaski about what he tried to do to receive help for his gambling problem and the report of Mr. Goldman separately on June 5, 2017 along with Mr. Goldman's report and other material cited herein.

[2]  As a result of the Supreme Court's decision in *Beckles v. U.S.*, ___ U.S. ___, 137 S.Ct. 886 (2017) there is no longer a challenge that can be made that the residual clause in USSG 4B1.2(a)(2) defining crime of violence is void for vagueness.

individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," *Koon v. U.S.*, 518 U.S. 81(1996)" and that "[u]nderlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime,'" citing *Williams*, 337 U.S., 241, 247 (1949).

## Argument

I.  **Role of the §3553 Factors and Calculation of the Guideline Range**

   A.  **The Role of the Advisory Guidelines and §3553(a) Factors in Determining the Sentence**

As this Court knows, the Sentencing Guidelines are advisory. *US. v. Booker*, 543 U.S. 220 (2005) and *Gall v. U.S.*, 552 U.S. 38, 49-51, 59 (2007). The Supreme Court re-emphasized that sentencing is supposed to be an individualized determination in *Pepper*, 131 S.Ct at 1241 when it said:

> Accordingly, although the "Guidelines should be the starting point and the initial benchmark," district courts may impose sentences within statutory limits based on appropriate consideration of all of the factors listed in § 3553(a), subject to appellate review for "reasonableness." *Gall*, 552 U.S., at 49-51.

The first step in the sentencing process is to determine an accurate Guideline range. *Gall*, 552 U.S. at 49-51.

   B.  **The USSG Guideline Range**

The Probation Officer determined that since the USSG career offender guideline applied, the accurate offense level under the USSG was 29 (after a 3 level reduction for timely acceptance of responsibility) with a criminal history category of VI. [PSI at ¶55, ¶58, pp. 9-10 and ¶72, p. 14]. Under the USSG, the

3

Guideline range based on the career offender guideline is 151-188 months.

## II. A Consideration of the §3553(a) Factors Supports A Sentence That Is Below the Guideline Range

### A. The §3553(a) Factors

As this Court knows, it must consider the criteria set forth in 18 U.S.C. §3553(a). The primary directive in § 3553(a) is that the Court must impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing in §3553(a)(2).

Those purposes include the need:

- to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
- to adequately deter criminal conduct;
- to protect the public from future crimes of the defendant; and
- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining what sentence to impose on a particular defendant, a court is to consider those same factors, as well as the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the sentencing range under the Sentencing Guidelines; any pertinent policy statements; and the need to avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(1)-(6). The impact of requiring the Court to consider the §3553(a) factors including the history and characteristics of the defendant is that federal sentencing is no longer only an offense based system of sentencing; it is now an offense based and individual

4

defendant based system. *Peppers*, 131 S.Ct. at 1239-40.

> **B. Consideration of Factual Issues Bearing on the Application of the §3553(a) Factors in This Case**
>
> **1. The Crimes Committed by Mr. Sulaski**

In a little more than 1½ months in 2011, Mr. Sulaski tried to obtain $65,000 from one bank through extortion and then committed four bank robberies. [PSI, ¶¶1, 6-11, pp.5-6]. In the Count I bank extortion charge, language was used by the Defendant that certainly could have caused the bank manager and her employees to fear for their well-being. [*Id.* at ¶¶6-7, pp. 5-6]. In the four bank robberies in this case, no threatening language was used but the defense does not contend that the bank employees did not or should not have felt afraid. [*Id.*, ¶8-11, p.6]. Mr. Sulaski readily acknowledges that what he did was wrong and likely caused at least emotional harm to the employees with whom he interacted. He is very apologetic about what he did. (Jeffrey Sulaski Letter].

The fact that this case was his second run of bank robberies is also an aggravating factor. Clearly, in this case, Mr. Sulaski needed to be sentenced in accordance with §3553(a) factors to a significant period of imprisonment to promote respect for the law, reflect the seriousness of his crime, provide just punishment and deter him and others from committing similar criminal offenses. The sentence being requested by the defense is more than sufficient to accomplish those purposes.

### 2. Mr. Sulaski's Life, His Ownership that the Crimes He Committed Were Wrong and Harmful to Others, the Impact of His Gambling Addiction and His Need for Treatment

Mr. Sulaski graduated from Conant High School in 1978 and also attended some community college between 1980 and 1983. He served his country by entering the United States Army in 1981, serving for three years, and then serving several years in the United States Army Reserves. Defendant earned several ribbons or medals and received an honorable discharge in February 1987. [PSI, ¶¶99, 106, p. 18-9].

Mr. Sulaski is 57 years old. He belongs to a loving and supportive family. His brother Ron Sulaski and his sister Cynthia Sulaski have expressed support for him, even as they each fully understand the nature and scope of the charged offenses. Both have identified the defendant's gambling addiction as the main source of his problems with the law. Both his father and a sister, who has died, also had significant gambling addiction problems. [Federal Defender Sentencing Report filed under seal on 2/18/14; Letters of Ronald Sulaski and Cynthia Sulaski; PSI, ¶¶82, 94, pp. 16-7].

Both defendant's sister and brother discussed defendant's remarkable assistance to their mother providing end of life care, at a time when their mother was suffering from dementia and cancer and needed full-time care. [[Federal Defender Sentencing Report filed under seal on 2/18/14; Letters of Ronald Sulaski and Cynthia Sulaski]. When Mr. Sulaski's mother died, her

6

home was sold, Mr. Sulaski was homeless, living in motels and back to gambling and then within two months, robbing banks again. [PSI, ¶1, p. 5; ¶87, p. 16].

Mr. Sulaski is clear that what he did was wrong and harmful to the bank employees with whom he interacted in the one extortion and four bank robberies. He is committed to changing his life. While he was at the MCC and then at FCI Coleman, he tried to get Gamblers Anonymous assistance but the federal prison system does not provide treatment for gambling addiction. [Sulaski letter and documents attached].

Dr. Stephen H. Dinwiddie, M.D., a psychiatrist retained by the Federal Defender's Office, diagnosed defendant as suffering from Pathological Gambling. Defendant's pathological gambling began when he was 33 years old and continued up until the present time with several periods of abstinence (e.g. when he visited his sister in Oregon in late 1998 through early 1999 and when he cared for his mother from August, 2009 until her death in January, 2011after his release from prison for the first set of bank robberies. Defendant's gambling addiction has been deep, serious and entrenched, leading to periods of destitution, homelessness, stays in shelters and part-time jobs. As Dr. Dinwiddie observed, bank robbery, for defendant, was a means he contemplated and then used to try to financing his gambling. [Report of Dr. Dinwiddie provided to Federal Defender Office and later to this Court].

Mr. Sulaski was recently evaluated by Michael Goldman, a certified addictions counselor (CRADC) for the past 33 years and a Licensed Professional Counselor (LPC), and a certified Problem and Compulsive Gambling Counselor (PCGC). Mr. Goldman interviewed Mr. Sulaski and reviewed the key documents in this case, including the PSI and its addendum and supplements and Dr. Dinwiddie's report. He concluded that Mr. Sulaski`exhibits any signs of having a pathological gambling disorder as described in the DSM-V and also indicated an interest in treatment for this disorder. [Goldman Report re Sulaski at p. 1][3]. Mr. Goldman recommended a treatment program for Mr. Sulaski, which included 1) enrolling in a dedicated pathological treatment program (noting that there are in-patient and intensive out-patient programs available in Chicago), 2) attending 3-4 GA meetings per week; maintaining full-time employment, and 4) signing up for self-exclusion from casinos in the state of his residence and nearby states. [*Id.* at p. 2].

**C. A Sentence of 95 Months Imprisonment Is Consistent With the Parsimony Principle**

In this case there are several reasons why a sentence of 95 months, rather than a career offender sentence of 151 follows the dictates of the parsimony principle ("a sentence, sufficient, but no greater than necessary..."). In so arguing, the defense in no way seeks to minimize the seriousness and

---

[3] Mr. Goldman's report is being provided to the Court, the AUSA and the Probation Officer by personal service and U.S. mail. Defendant requests that this document be kept under seal.

number of Mr. Sulaski's bank robberies and extortion crimes but these offenses also must be considered in the context of Mr. Sulaski's life.

First, the career offender USSG provisions have been criticized repeatedly by many courts for including many more persons that "the baddest of the bad". *See U.S. v. Newhouse*, 919 F.Supp.2d 955, 967-68 (N.D. Iowa 2013) (citing cases); *U.S. v. Fernandez*, 436 F.Supp.2d 983, 988-90 (E.D. Wisc. 2006). The Seventh Circuit has made clear that district courts are free to depart from the career offender guidelines due to policy disagreements. *U.S. v. Conner*, 598 F.3d 411, 416 (7th Cir. 2010).

Second, a sentence consistent with the parsimony principle must give strong consideration not just to what Mr. Sulaski did that was wrong and the number of times he did it but also to the impact of his gambling addiction, the difficult circumstances he faced in January, 2011 when his mother died and suddenly he was homeless and to the reality that while he in the custody of the Bureau of Prisons, he cannot get treatment for his gambling addiction.

The impact of Mr. Sulaski's gambling addiction on his criminal behavior can be overstated but it should not be underestimated or ignored. This man led an almost perfectly law abiding life for over 20 years while an adult. When he got hooked by his gambling addiction, that led to a feeling of desperation, which led to the bank extortion and robberies in this case and in his earlier case. Such an addiction justifies a below USSG sentence. As Judge Adelman

said in *U.S. v. Dikiara*, 50 F.Supp. 3d 1029, 1032-33 (E.D. Wisc. 20i4) said:

> As Judge Mark Bennett recently explained, addiction can mitigate a defendant's culpability. "By physically hijacking the brain, addiction diminishes the addict's capacity to evaluate and control his or her behaviors. Rather than rationally assessing the costs of their actions, addicts are prone to act impulsively, without accurately weighing future consequences." *United States v. Hendrickson,* 25 F. Supp. 3d 1166, 1174 (N.D.Iowa June 11, 2014). Judge Bennett was talking about drug addiction, but as the evidence defendant presented showed, gambling addiction is similar. The American Psychiatric Association recently reclassified pathological gambling from an impulse control disorder to an addiction-related disorder. *See* American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* ("DSM–V") 585 (5th ed.2003); *see also* Ferris Jabr, *How the Brain Gets Addicted to Gambling,* Scientific American, Nov. 5, 2013.[4]

Mr. Sulaski knows he needs help in overcoming his gambling addiction–that is a principle reason why the defense asked the Court to appoint Mr. Goldman, so that there can be plan in place to get him treatment. However, that cannot happen while he is in federal prison because the BOP does not provide gambling addiction treatment. [*See* Documents attached to Mr. Sulaski's Letter to the Court). However, pursuant to 18 U.S.C. §3553(a)(2)(D) his sentence should reflect the need "to provide the defendant with needed educational or vocational training, medical care, or other

---

[4] In that case, Judge Adelman also noted the following at 50 F.Supp.3d at 1033, n.1, which is applicable here as well: "In U.S.S.G. § 5H1.4 (policy statement), the Commission indicated that addiction to gambling was **not** reason for a downward departure. However, such provisions are **not** binding on the court in determining the sentence under § 3553(a). *See, e.g., United States v. Reyes–Medina,* 683 F.3d 837, 841–42 (7th Cir.2012). For the reasons stated in the text defendant's gambling addiction was directly relevant to the sentencing factors under § 3553(a)."

correctional treatment in the most effective manner". In this case, that means a shorter sentence with some request to the BOP that when it is ready to put Mr. Sulaski in a halfway house, that one be chosen that offers the services outlined in Mr. Goldman's report. Ideally that should mean that when Mr. Sulaski is actually out on the streets, his recovery will be well underway. In fashioning supervised release requirements, the Court can impose continued treatment as outlined by Mr. Goldman. That and Mr. Sulaski's age (currently 57 years old) should eliminate any possibility of recidivism.

## Conclusion

For the reasons stated herein, Mr. Sulaski asks this Court to sentence him to 95 months in prison with recommendations for halfway house placement in a setting in which he can obtain gambling addiction treatment and with supervised release terms that will ensure ongoing gambling addiction treatment among other conditions.

                                        Respectfully submitted,

                                        s/Steven Saltzman
                                        Attorney for Defendant Sulaski

Steven Saltzman
200 South Michigan Avenue, Ste. 201
Chicago, Illinois 60604
(312) 427-4500
Date: June 2, 2017

**PROOF OF SERVICE**

    I,  Steven Saltzman, an attorney hereby certifies that  on June 2, 2017 in accordance with the Fed.Crim.P. 49, Fed.R.Civ.P.5 and LR5.5, and the General Order on Electronic Case Filing (ECF), Defendant 's Re-Sentencing Memorandum was served pursuant to the district court's ECF system as to ECF filers.

                                        s/Steven Saltzman

Steven Saltzman
200 S. Michigan Ave., Ste 201
Chicago, IL  60604
312-427-4500