IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 11 CR 659-1 |
| Jeffrey Sulaski ) | Judge Robert W. Gettleman |
| ) | |
| Defendant. ) | |

**Defendant's Re-Sentencing Reply Memorandum**

**Introduction**

The Sentencing Memorandum submitted by the U.S. Attorney's Office is premised on two critical errors that paint a skewed picture. First, it essentially ignores the guidepost enunciated by Justice Sotomayor about how the Court is supposed to make a sentencing determination. [U.S. Attorney's Office Sentencing Memorandum ("U.S. Atty Office Sent. Mem.") at p. 6-10]. As she said in *Pepper v. U.S.*, 131 S.Ct. 1229, 1239-40 (2011):

> "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue," *Koon v. U.S.*, 518 U.S. 81(1996)" and that "[u]nderlying this tradition is the principle that 'the punishment should fit the offender and not merely the crime,'" citing *Williams*, 337 U.S., 241, 247 (1949).

What the U.S. Attorney's Office does is to ignore the considerable positives in Mr. Sulaski' background and focus exclusively on two distinct periods in 2003 and 2011 in which he quite clearly was an out-of-control bank

robber, who caused a number of bank employees to be put in emotional fear. [PSI, ¶¶1, 64-8; U.S. Atty Office Sent. Memo at p. 4]. The U.S. Attorney's Office also incorrectly mis-states the impact of the defense's conceptualization of Mr. Sulaski' gambling addiction and its connection to the bank robberies as a defense attempt to excuse and completely justify his conduct. [*Compare Id.* at p. 8-9 with Defendant's Re-Sentencing Memorandum at p. 6-10].

The defense has never claimed that somehow Mr. Sulaski's gambling addiction justified or excused his behavior or that he had no culpability for his crimes. [*Id.*]. The defense has never used Mr. Sulaski's gambling addiction as an insanity defense that excuses his criminal behavior. Instead what the defense has repeatedly asserted is that Jeffrey Sulaski had led a stellar life of devotion to this family, military service and steady employment, but then got caught up in the same addiction his father and a sister suffered from and that resulted in out-of-control gambling that pushed him to do things, i.e. "rob banks" that he had never done before. [*Id*]. In this case, when Mr. Sulaski was first put on supervised release in 2009 after imprisonment from his first set of bank robberies, there was no gambling in 2009-10 and no bank robberies from 8/09 until 3/11. For 1½ years, Mr. Sulaski lived with and cared for his mother. It was only after she died in 2011 and he became homeless that he began gambling, leading to another run of bank robberies. [*Id.*; Report of Dr. Dinwiddie and Michael Goldman, previously submitted, Letters from Ronald

and Cynthia Sulaski; PSI, ¶¶82, 94, pp. 16-7]

The defense is not asking the Court to not punish Mr. Sulaski severely. That is what a 95 month sentence of imprisonment is. What he is asking the Court to do is not sentence him to a USSG sentence jumped by the career offender guidelines because his gambling addiction really is the only explanation for what caused this otherwise productive, law abiding man, to become a serial bank robber in two distinct periods of his life.

Obviously, Mr. Sulaski cannot go down that dark road again. That is why the defense sought the appointment of gambling addiction expert Mr. Goldman to design a program that Mr. Sulaski can begin when he is released to a halfway house (due to the lack of gambling addiction treatment at USBOP) so when his supervised release begins, he will already be on the road to recovery and have in place the mechanisms and people to reach out to in times of crisis to ensure that his unlawful conduct will never occur again. The defense requests that the Court add the 4 recommendations contained in Mr. Goldman's report to the conditions of supervised release proposed by the P.O. .

## Argument

**I.  In Applying the §3553(a) Factors, This Court Must Consider and Give Weight to Mr. Sulaski's Many Years of Living a Very Good Life–His Years of Employment and Military Service and his Close Family Ties, Including Caring for His Mother Until Her Death**

As recounted in the PSI and Defendant's Re-Sentencing Memorandum, Mr. Sulaski led an excellent life until his mid-30's when his gambling began.

He served in the military on active duty and in the reserves and was gainfully employed for a number of years. [Defendant's Re-Sentencing Memorandum (Deft. Re-Sentencing Memo") at p. 1, 6-7, Letters of Ronald and Cynthia Sulaski]. He was a loving, devoted family member, who, having been released from prison after his first string of bank robberies, cared for his mother at her home so she could live there rather than in some nursing home. [*Id*].

The U.S. Attorney's Office ignores all of this and focuses only on Mr. Sulaski's crimes as the only thing that should be considered in determining his sentence. [U.S. Atty's Office Sent. Memo at p. 7-10]. To the AUSA, Mr. Sulaski's "history clearly shows an abject failure to abide by the law. Defendant is a recidivist–a serial bank robber." [*Id*. at p. 7]. His caring for his mother when he was released from prison after the first set of bank robberies, that is something that is just ignored by the prosecution except to allow it to make the point that Mr. Sulaski showed he could avoid gambling by abstaining when he was released from prison in August, 2009. [*Id*. at p. 9].

II. **While Mr. Sulaski Was Able to Abstain from Gambling and Bank Robbery While Caring for His Mother for 1½ Years, He Relapsed After She Died and He Became Homeless**

In order to undercut the Court giving consideration to a reduced sentence due to Mr. Sulaski's gambling addiction., the U.S. Attorney's Office distorts that addiction and his ability to control it. What the psychiatric evaluation of Mr. Sulaski by Dr. Dinwiddie shows is that Mr. Sulaski went from

4

leading a perfectly law abiding life to getting gradually hooked onto gambling, the addiction his father and sister had, in about 1993. For the next seven years, he periodically was able to limit his affliction and every once in awhile, like when he was staying with his sister in 1998, overcome it but ultimately it got too much for him and then his only means of saving himself in his distorted way of thinking was to rob banks. [*Id*]. He got zero treatment for his gambling addiction while in prison although he tried to get such help but could not because USBOP does not provide treatment for gambling addiction.

When he got out of prison in 8/2009, he had a mission that was crucial to him–helping his mother live in her own home as she was being overcome by dementia. [*Id.*, Letters of Ronald and Cynthia Sulaski]. That aided him in staying away from gambling. But when she died and he became homeless, he fell back into his addiction and very quickly, the second set of bank robberies followed. For the U.S. Attorney's Office, this shows that Mr. Sulaski can start or stop gambling whenever he wants to, without having to resort to bank robberies. [U.S. Atty Sent. Memo at p. 7-8]. In reality, what it should show is that Mr. Sulaski needs gambling addition treatment so that he can develop the skills, have knowledge and access to resources in place to overcome his addiction when he cannot do it simply by himself. [Report of Michael Goldman]. That is what Mr. Sulaski wants–a clear means of getting treatment. That is why he fully supports having Mr. Goldman's recommendations made part of

his conditions of supervised release.

The prosecution makes the point that Mr. Sulaski had tools and was able to plan his activities in committing the bank robberies from 3-5/2011 so this means he does not really have a gambling addiction. [*Id.* at p. 8-9].[1]  One immediate response is that being able to engage in a certain amount of planning does not mean that the person is not suffering from addiction and should not receive a lower sentence.  That was absolutely true of the defendant in *U.S. v. Dikiara*, 50 F.Supp. 3d 1029, 1030-33 (E.D. Wisc. 2014), who, over an 11 year period, stole one million dollars from her employer by using her position as office manager to write checks to herself and her creditors, which she used to fund her gambling addiction.  *Id.*  Judge Adelman sentenced her to less than half of the low end of her Guideline range.  *Id.*  *See* also *U.S. v. Hicks*, 985 F.Supp. 2d 1307, 1310-11 (M.D. Ala. 2013).

Mr. Sulaski has spent approximately 13 out of the last 15 years in prison for bank robberies that were rooted in his gambling addiction, which turned a law abiding citizen into someone who robbed banks.  He is very clear that he needs to kind of treatment and resources that Mr. Goldman has recommended

---

[1]  One key example that the prosecution relies on, having done so in the original sentencing as well, is to claim that Mr. Sulaski had checked into the hotel at which he was arrested, using an alias.  In fact as the Agents' Arrest Report makes clear, he had checked in, using his real name.  That is how the agents were able to locate and arrest him.

so that after his release from prison, he will never again be in this situation.[2]

## Conclusion

Mr. Sulaski is not asking for a light sentence because of the role his gambling addiction played in his change from a law abiding citizen to someone who has robbed banks. Ninety-five months is a very long time to spend in prison. Such a sentence serves the core principles contained in §3553(a)(2) when, as requested here, this sentence is accompanied by halfway house gambling addiction treatment and supervised release conditions that make that treatment part of Mr. Sulaski's life.

                        Respectfully submitted,

                        s/Steven Saltzman
                        Attorney for Defendant Sulaski

Steven Saltzman
200 South Michigan Avenue, Ste. 201
Chicago, Illinois 60604
(312) 427-4500
Date: July 14, 2017

---

[2] The prosecution makes the point that USSG 5H1.4 expressly indicates that a departure cannot be based on gambling addiction. Judge Adelman made the point that this is not a bar in the post-*Booker* era. *U.S. v. Dikiara*, 50 F.Supp. 3d at 1332, n. 1.

**PROOF OF SERVICE**

    I,  Steven Saltzman, an attorney hereby certifies that on July 14, 2017 in accordance with the Fed.Crim.P. 49, Fed.R.Civ.P.5 and LR5.5, and the General Order on Electronic Case Filing (ECF), Defendant 's Re-Sentencing Reply Memorandum was served pursuant to the district court's ECF system as to ECF filers.

                                                       s/Steven Saltzman

Steven Saltzman
200 S. Michigan Ave., Ste 201
Chicago, IL  60604
312-427-4500